# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**RANDY DAIL TANNER**                                                                                          **PLAINTIFF**

**V.**                           **CASE NO. 3:23-CV-00030 JM-JTK**

**SOCIAL SECURITY ADMINISTRATION**                                        **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.     Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**II.    Introduction:**

Plaintiff, Randy Dail Tanner ("Tanner"), filed applications for disability benefits and supplemental security income on March 20, 2020. (Tr. at 4-14). In the applications, he alleged that his disability began on July 1, 2019. *Id*. The applications were denied initially and upon reconsideration. After conducting a hearing, an

Administrative Law Judge ("ALJ") denied Tanner's claim in a written decision dated February 9, 2022. *Id*. The Appeals Council denied Tanner's request for review of the hearing decision on December 13, 2022. (Tr. at 33-37). The ALJ's decision now stands as the final decision of the Commissioner, and Tanner has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

### III.     The Commissioner's Decision:

Tanner was 50 years old on the alleged onset date, and he went to school through high school. (Tr. at 12). He has past relevant work as a hair stylist. *Id*.

The ALJ found that Tanner had not engaged in substantial gainful activity since the alleged onset date of July 1, 2019.[1] (Tr. at 13). The ALJ found, at Step Two, that Tanner has the following severe impairments: osteoarthritis/DJD in hip, asymptomatic HIV, borderline intellectual functioning, depression, and anxiety. (Tr. at 7).

At Step Three, the ALJ determined that Tanner's impairments did not meet or

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

equal a listed impairment.² *Id*. Before proceeding to Step Four, the ALJ determined that Tanner had the residual functional capacity ("RFC") to perform work at the light exertional level, with the following limitations: (1) can occasionally stoop, kneel, crouch, and crawl; (2) can occasionally climb ramps and stairs but should avoid hazards such as working at unprotected heights or dangerous moving mechanical parts; (3) can perform work that requires occasional contact with the general public; (4) can understand, remember, and carry out simple instructions and can make judgments in simple work-related situations; and (5) can tolerate occasional changes in routine work setting. (Tr. at 8).

At Step Four, the ALJ found that Tanner was unable to perform any past relevant work. (Tr. at 12). At Step Five, the ALJ relied upon VE testimony to determine that, based on Tanner's age, education, work experience, and RFC, Tanner could perform work in the national economy. *Id*. Therefore, the ALJ concluded that Tanner was not disabled. (Tr. at 13).

## IV. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's

---

² 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent

decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

    B.   Tanner's Arguments on Appeal

Tanner contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. His sole argument is that the ALJ failed to fully develop the record.[3]

Tanner treated arthritic pain conservatively with medication and steroid shots, which helped to some degree. (Tr. at 9). He contends that because June 2021 hip x-ray results were not in front of the DDS state-agency medical expert when she reviewed the records, the ALJ should not have relied upon her RFC assessment for light work. (Tr. at 127-150). Tanner says that "no medical professional reviewed" the x-ray, which is wrong. (Doc. No. 10 at 10.) A radiologist reviewed the results and offered his impression. (Tr at 835). The x-ray did not show severe conditions that would have undermined the RFC for light work. The DDS expert's conclusions were consistent with the record.

---

[3] Tanner limits his appeal arguments to hip and shoulder arthritis, and does not discuss any mental impairments. The Court will likewise tailor its discussion. *See Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020).

Next, Tanner asserts that because his nurse referred him to get a second opinion about his arthritis, the ALJ should have further recommended treatment or obtained a second opinion.[4] It is the claimant's job to present his best possible case, and the ALJ need not engage in a fishing expedition to obtain more evidence or obtain treatment for the claimant. Given the conservative course of treatment for arthritic pain and Tanner's ability to work at McDonald's throughout the relevant time-period (Tr. at 6), it is unlikely that a second opinion would have changed the ALJ's decision. The medical opinions in the record provided sufficient support for the ALJ's RFC determination.

Finally, Tanner told the ALJ that there was a shoulder x-ray taken during the relevant time-period, but his counsel said at the hearing that no such evidence was in the record. (Tr. at 55-62). Counsel did not ask to hold the record open, and did not submit any evidence of shoulder x-rays to the Appeal Council. Again, the ALJ is not required to track down records that apparently do not exist at the time he makes his decision.

---

[4] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant and the ALJ's duty to develop is not never-ending. *Id.* The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011).

The ALJ considered medical opinions, Tanner's daily activities, his ability to work at the time, and his relatively conservative course of treatment. (Tr. at 9-13). The record did not contain conflicts that required further development, and the RFC incorporated all of Tanner's credible limitations.

### V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The record was fully developed. The finding that Tanner was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 27th day of November, 2023.

_____
UNITED STATES MAGISTRATE JUDGE